UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIOS ALEXANDER,<br><br>            Petitioner,<br><br>       v.<br><br>R. GROWER, et al.,<br><br>            Respondents. | No.  2:12-cv-0651 WBS CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254.  He stands convicted of five offenses related to an incident occurring on January 13, 2009 during which petitioner and another man, while impersonating peace officers, attempted to rob a marijuana grower at gunpoint in the grower's house, while the grower's wife and small child were present.  Petitioner pled "no contest" in the Superior Court of El Dorado County.  He now challenges his pleas and negotiated sentences entered thereon.[1]  Respondents filed their answer on December 7, 2012.  Petitioner filed his traverse on January 2, 2013.

---

[1] Petitioner raises numerous claims under eight subheadings.  The court discusses most of the claims presented by petitioner.  To the extent the court does not address a claim it is because the claim clearly has no factual support, is legally frivolous, or both.  Also, the court does not address any alleged violations of state law as federal habeas relief is only available for violations of federal law.  28 U.S.C. § 2251(a).

1

I. Background

The following summary of facts related to petitioner's convictions is provided by counsel for respondents:

> Per evidence at a March 25, 2009 preliminary hearing, Placer County Deputy Sheriff Sean Fitzgerald arrived at a home on 4094 Carson Road in the County of El Dorado at about 3:30 p.m. on January 13, 2009, in response to a 911 call. (Doc 45 at 38, 50.) Resident Billy Petree ran up and told Deputy Fitzgerald to enter, that "they are robbing me" and that "they are going out the back door." (*Id*. at 39.) Deputy Fitzgerald ran to the back yard and saw two persons in law enforcement clothing fleeing over the back fence. (*Id*. at 40.)
>
> As would be related by Mr. Petree to Detective John Yaws, the 911 call happened while Petitioner and codefendant Harvey Baker—both of whom were impersonating Sheriff officers—held Petree's family at gunpoint in their family home in an attempt to rob them of money and marijuana. (Doc. 45 at 51-54.) Petitioner threatened to shoot Petree's child. (*Id*. at 54.) At some point, they handcuffed Petree. (*Id*. at 55.) Reasoning that actual law enforcement officers would not have left him handcuffed alone in a room, Petree dialed 911 during the burglary. (*Id*. at 55.) Petree announced he had dialed 911, and Baker tried to get Petitioner to leave. (*Id.* at 55.) Baker removed Petree's handcuffs and both robbers fled as Deputy Fitzgerald's vehicle arrived. (*Id.* at 56-57.) Petree's common law wife Crystal Cody would later recount that Petitioner (whom she identified by conduct) pointed a firearm at the head of her daughter K-Lee. (*Id.* at 59, 60-61).
>
> Deputy Fitzgerald saw the robbers flee over the fence, and saw petitioner drop a handgun. (Doc. 45 at 40, 41.) Deputy Fitzgerald caught Baker within about 200 to 300 yards from the residence. (*Id*. at 41-42). Baker wore law enforcement clothing. (*Id*. at 43.) Petree approached, "yelling and screaming" that his neighbors had "caught the other guy." (Doc. 45 at 44.) Petitioner was outfitted in law enforcement clothing, some of it stolen. (*Id*. at 45, 71, 72-74.)
>
> On the scene, Petree promptly identified Petitioner and Baker as the robbers. (Doc. 45 at 46.) He said petitioner was the robber who had dropped the gun. (*Id*. at 45-46, 57.)
>
> Petitioner and Baker had arrived in a gold Lincoln-model car. (Doc. 45 at 68.) Inside the car were various items of law enforcement property, including vehicle hardware (police visor lights) and officially-marked law enforcement clothing. (*Id.*) There were also various other items of stolen personal property.
>
> While in jail awaiting trial, Petitioner telephoned his mother and asked her to get Terry Benson to persuade the victims to sign affidavits attesting "that this crime didn't happen or this wasn't a crime or . . . just a big joke or prank gone bad or something along those lines." (Doc. 45 at 78.) In a later telephone call with Benson,

2

> Petitioner said the victims needed to be persuaded to sign affidavits stating "this was a big accident, that this didn't happen, they need to get this to the judge and D.A. so this whole thing can go away," and in exchange Petitioner would "take care of them big time." (*Id.* at 79.) Officers seized from Petitioner's cell several affidavits that Petitioner intended to send to Benson under the pretense that Benson had a law office, which affidavits were for the victims to sign. (*Id.* at 81-82.)

On May 26, 2010 in the Superior Court of El Dorado County, the day before petitioner was scheduled to go to trial, petitioner pled no contest to the following offenses in exchange for the following sentences:

1. Conspiracy to commit robbery (count 1):   9 years.
2. Receiving stolen property (count 5):   8 months.
3. Dissuading a witness (count 7):   2 years.
4. Dissuading a witness (count 8):   2 years.
5. Dissuading a witness (count 9):   2 years.
6. Dissuading a witness (count 10):   2 years.

Petitioner also accepted a sentence enhancement of 1 year for impersonating a police officer pursuant to California Penal Code § 667.17. Petitioner's total sentence is 18 years and 8 months. Petitioner did not appeal his plea or sentences. He did present several collateral attacks, however. All of the claims addressed below were denied in state court without meaningful comment, except as indicated.

II. Standard For Habeas Corpus Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)." It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

When a state court rejects a federal claim without addressing the claim, a federal court presumes the claim was adjudicated on the merits, in which case § 2254(d) deference is applicable. Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). This presumption can be rebutted. Id.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly

established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

III. Federal Habeas Challenges To Guilty Pleas Generally[2]

Petitioner makes numerous allegations of error in his petition. However, the types of claims a habeas petitioner may assert to challenge a guilty plea and the resulting sentence are substantially limited:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no relationship to the prosecutor's business (e.g. bribes).

Brady v. United States, 397 U.S. 742, 755 (1970).

More generally, any claims which do not concern whether petitioner entered his plea voluntarily and intelligently are not cognizable in a federal habeas action. See Boykin v. Alabama, 395 U.S. 238, 242 (1969). This is because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's

---

[2] Under California law, a plea of "no contest" has the same effect as a plea of guilty. See, e.g., People v. West, 3 Cal.3d 595 (1970). Accordingly, federal constitutional principles governing guilty pleas apply to petitioner's claims in the instant case. Miller v. McCarthy, 607 F.2d 854, 856 (1979).

advice "was within the range of competence demanded of attorneys in criminal cases." Mann v. Richardson, 397 U.S. 759, 771 (1980).  To establish that a guilty plea was involuntary due to ineffective assistance of counsel, petitioner must show that:  (1) counsel's recommendation to plead guilty was not within the range of competence demanded of attorneys in criminal cases; and (2) that there is a reasonable probability that, but for counsel's errors, petitioner would not have pled guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 56-59 (1985).  The court objectively assesses whether the habeas petitioner suffered the prejudice described in part (2).  Id. at 59-60.

As for challenges to pleas of guilty, the Supreme Court has held:

> the representations of the defendant, his lawyer, and the prosecutor at a [change of plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). [3]

IV. Ineffective Assistance of Counsel

   A. Gilbert Maines

On pages 19-21 of his habeas petition,[4] petitioner complains in several respects about representation he received from Gilbert Maines, the first of three attorneys who represented

---

[3] As indicated above, petitioner makes numerous allegations, most of which are not supported by a factual showing, concerning violations of Constitutional rights which are not related to the voluntary and intelligent nature of his plea or the performance of his counsel during the plea process.  As the following claims were either precluded by petitioner's guilty plea and/or are not supported by factual allegations. the court does not discuss them:  1) the denial of a timely preliminary hearing; 2) lack of severance from charges against Harvey Baker; 3) petitioner's right to a speedy trial; 4) the prosecution's failure to turn over evidence in discovery where no showing has been made as to whether the evidence was relevant to petitioner's defense;  5) failure by the prosecution to follow court orders; 6) petitioner's right to subpoena witnesses; 7) destruction of evidence where no showing has been made that the evidence was material to this case, let alone exculpatory.

[4] The page numbers identified are generally those assigned by the court's electronic docketing system.

petitioner at the trial court level. As indicated above, when a habeas petitioner challenges a plea of guilty, the focus is on whether the plea was voluntary and intelligent. Petitioner has protection from the Sixth Amendment with respect to advice as to whether he should plead guilty. Because Mr. Maines' representation of petitioner did not last into the plea process, his actions, generally speaking, cannot form the basis of a meritorious ineffective assistance of counsel claim. Based on petitioner's allegations there does not appear to be any reason for deviation from this general rule.

### B. David Weiner

On pages 21-22, petitioner complains about the representation provided to him by his second attorney, David Weiner. Because, like Mr. Maines, Mr. Weiner did not represent petitioner during the guilty plea proceedings at issue in this case, Weiner's actions, generally speaking, cannot form the basis of a meritorious ineffective assistance of counsel claim. Petitioner fails to point to any facts warranting an exception to that rule.

### C. Erik Schlueter

Petitioner also claims his third attorney, the attorney who represented petitioner when he pled guilty, Erik Schlueter, rendered ineffective assistance of counsel in several respects. The claim most worthy of discussion is that Schlueter failed to file a notice of appeal for petitioner despite the fact that on the day petitioner pled guilty petitioner requested that he do so. This claim was rejected by all three levels of California's courts without comment. For purposes of deciding whether this claim is precluded by 28 U.S.C. § 2254(d), the court assumes that the California courts applied the correct federal law: if a defendant asks his attorney to file a notice of appeal before the deadline for filing runs and the attorney fails to do so, it amounts to ineffective assistance of counsel. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).

Assuming that law was applied, the only way the court could have denied petitioner's claim is by finding that petitioner's assertion that he directed attorney Schlueter to file a notice of appeal was either not truthful or simply not sufficiently established in view of the entire record which was before the court. If this finding was based on a reasonable determination of the facts in light of the evidence presented to the California Supreme Court, petitioner is barred from

obtaining relief under 28 U.S.C. § 2254(d).

The only evidence presented to the California Supreme Court that petitioner requested that his attorney file a notice of appeal was petitioner's assertion that he did so. A review of the record demonstrates no corroboration of petitioner's assertion. Indeed, the very fact that petitioner pled guilty is evidence he did not want to appeal because he preferred a negotiated sentence to risking a longer sentence by pursuing his rights. Further, the trial court conducted a complete and thorough colloquy with the petitioner before accepting his plea; at no time did petitioner express a desire to appeal. ECF No. 48 at 100-117.

Petitioner asserts that during a pre-trial hearing on February 19, 2010, (three months prior to the entry of his nolo plea) he expressed a desire to preserve certain issues for appeal (Respt's' Ex. 15 at 32-41), arguing that this corroborates his claim that after his plea he asked attorney Schlueter to file a notice of appeal. The court disagrees; petitioner's asserted desire to preserve certain issues for appeal which arose before he pled guilty sheds no light on whether petitioner wished to appeal immediately following his negotiated, stipulated plea. The court concludes that petitioner was satisfied that his plea of guilty would result in a final disposition of his case given that he could have elected not to plead guilty and pursue any violations he believed occurred through trial proceedings and the appellate process.

In this court, self-serving allegations by a habeas petitioner are generally not sufficient to warrant relief for obvious reasons. See e.g., Womack v. Del Papa, 497 F.3d 998 (9th Cir. 2007) (ineffective assistance of counsel claim denied where, aside from his self-serving statement, which was contrary to other evidence in the record, there was no evidence to support his claim); Dows v. Wood, 211 F.3d 480, 4878 (9th Cir. 2000) (noting that there was no evidence in the record to support petitioner's ineffective assistance of counsel claim, "other than from Dows's self-serving affidavit"). Considering the circumstantial evidence indicating petitioner did not timely request that Schlueter file a notice of appeal, the California Supreme Court's rejection of petitioner's claim that Schlueter's failure to file a notice of appeal amounted to ineffective assistance of counsel was not based upon an unreasonable determination of the facts before the California Supreme Court.

Petitioner makes a number of allegations about attorney Schlueter's performance before petitioner pled guilty. Most of the allegations are not worthy of comment because petitioner fails to point to facts suggesting that had Schlueter done as petitioner says he should have, petitioner would not have pled guilty.[5] Petitioner makes several assertions about Schlueter's mishandling of "exculpatory" evidence and Schlueter's failure to discover such evidence, but despite the numerous allegations, petitioner fails to point to anything suggesting Schlueter did not gather all the information helpful to petitioner's case that he could gather. For example, one of petitioner's claims is that Schlueter failed to subpoena alleged witness Martin Martinez. Petitioner never had a trial, so there was no reason to subpoena Martinez as a witness. Furthermore, the court has reviewed the declaration signed by Martinez (Pet., Ex. A at 16-17) and the statements made therein[6] are not worthy of belief.

---

[5] At several places in his petition, petitioner complains that weapons and ammunition taken from the scene near the home of Billy Petree were not sent to an outside expert in Oakland for fingerprint analysis. Fingerprint analysis was conducted as to the weapons and ammunition by the Placer County Sheriff's Department and petitioner's fingerprints were not found on any of the items. Petitioner fails to point to anything suggesting further analysis would have resulted in any evidence beneficial to petitioner especially since Billy Petree admitted to the police that he touched the weapon a police officer saw petitioner carrying. ECF No. 45 at 45-46. Therefore, even if further fingerprint analysis was conducted on the weapon petitioner was allegedly carrying and Petree's fingerprints were found on the weapon, the new evidence generated would not have helped petitioner's defense in any meaningful way. In any case, by pleading guilty, petitioner waived all claims concerning whether the guns and ammunition should have been sent to an outside expert. See page 5.

[6] To Whom It May Concern:

Please accept this document as a sworn statement regarding statements I heard Billy Petree make concerning an incident that happened at his home in the month of January 2009. We both work full time at the mill in Camino California and in the beginning of the month of February Billy was talking to another worker telling him that two guys came over to his home because they were [mad] that he sold drugs to an underage kid that one of them were related to. Billy states that [the] guys were mad and told him he better stop selling drugs, the two people were about to leave his home he pulled out a 22 pistol and held them at gunpoint while he called 911. Billy said when the sheriff pulled up to his home the two people ran out his back door and he threw the gun out back at them. Billy said the he got scared because he had way over ten pounds of marijuana as well as meth and other guns inside his home. He then said he made up a bunch of charges against the two guys hoping the cops would believe him and his girlfriend Crystal so that they

1    For all of the foregoing reasons, petitioner's ineffective assistance of counsel claims
2 should be rejected.

V.  Vindictive Prosecution

"Ground II" in petitioner's habeas petition is titled "Petitioner Was Subjected To Vindictive Prosecution." Generally speaking, a person cannot be punished by a prosecutor for doing something he had a legal right to do, such as file an appeal. See Blackledge v. Perry, 417 U.S. 21, 25-26 (1974).

Because petitioner's claim of "vindictive prosecution" does not concern whether his guilty plea was entered voluntarily and intelligently as described above, the court cannot reach this claim. In any case, petitioner fails to point to anything suggesting he was prosecuted out of revenge for something petitioner had a right to do.

VI.  Prosecutorial Misconduct

Petitioner asserts he was subjected to multiple counts of prosecutorial misconduct by the assigned deputy district attorney. Again, any claims which are not related to whether petitioner's "no contest" plea was voluntary and intelligent are precluded. The court has reviewed all of the allegations of misconduct made by petitioner concerning the prosecutor, most of which have little or no factual support, and find that none of them concern whether petitioner's plea of guilty was both voluntary and intelligent. Petitioner fails to point to any facts suggesting the prosecutor somehow caused petitioner not to understand the consequences of his plea, or that she somehow took action [e.g. threats or blatant misrepresentations, see Ferrara v. U. S., 456 F.3d 278, 290 (9th Cir. 2006)] which resulted in petitioner pleading "no contest" not of his own free will. Furthermore, there is no evidence indicating that the prosecutor failed to disclose to petitioner any evidence which would have been favorable to petitioner's defense, or that she knowingly destroyed any such evidence. For these reasons, petitioner's prosecutorial misconduct claim

---

would not get into trouble for having all the illegal things they had. I do not think it is right for Billy and Crystal to make up these charges against those guys. My children play with the kids that live next door to Billy and Crystal and I did not know that he sold drugs. I feel that they put my children's life in jeopardy by their drug dealing and law enforcement should be informed. I am writing this affidavit of my own free will.

should be rejected.

VII. Coercion

Petitioner asserts that attorney Schlueter's representation as to what petitioner's sentence would be if he went to trial coerced petitioner into pleading guilty. However, petitioner fails to point to anything suggesting attorney Schlueter's representation was unreasonable; indeed had petitioner been convicted at trial he undoubtedly would have received a far greater sentence. Because petitioner has not shown he was impermissibly coerced into pleading guilty, his "Coercion" claim should be rejected.

VIII. Misconduct By Sheriff

Petitioner asserts he was subjected to "Sheriff Misconduct." As with petitioner's claims of prosecutorial misconduct, the court has reviewed all of the allegations of misconduct by peace officers and finds that none of them concern whether petitioner's plea of guilty was involuntary or unintelligent. Petitioner fails to point to any facts indicating any police officer somehow caused petitioner not to understand the consequences of his plea, or took action which resulted in petitioner pleading no contest not of his own free will. Further, there is no evidence that any police officer contributed to the withholding or destruction of evidence which would have been helpful in any way to petitioner's defense.[7] For these reasons, petitioner's "sheriff misconduct" claim should be rejected.

IX. Judicial Bias And Error

Petitioner claims "judicial bias and judicial prejudice contributed to the petitioner's conviction." Pet. at 52. Petitioner fails to point to any evidence of bias. He simply recounts certain rulings made by the trial court before petitioner pled "no contest" that were not favorable to petitioner. Petitioner fails to demonstrate that the rulings violated petitioner's Constitutional rights. Petitioner is not entitled to relief based upon judicial bias or error.

---

[7] A criminal defendant would be permitted to withdraw his plea of guilty if he could show: 1) before he pled guilty, a police officer or prosecutor failed to disclose information favorable to the accused and material to the defense; and 2) there is a reasonable probability that if the information had been disclosed the defendant would have elected to go to trial. See U.S. v. Nagara, 147 F.3d 881-82 (9th Cir. 1998).

X. Sentencing

Despite the fact that petitioner pled guilty to a negotiated sentence, he now argues the sentence he agreed to is unlawful. His argument is premised upon the fact that approximately two weeks after petitioner pled guilty, the parties stipulated as follows:

> The Parties . . . do hereby stipulate that the four counts of Penal Code § 136.1 which were charged and to which Mr. Alexander pled are NOT strikes under the Three Strikes Law (Penal Code §§ 667 and 1192.7) as they do not meet the definition of the serious felony under Penal Code § 1192.7(c)(37). The Parties agree that there was no intimidation of victims or witnesses in this case.

Pet. at 119. Nonetheless, petitioner fails to point to any facts suggesting that this stipulation renders the sentence he accepted unlawful. He claims "Penal Code 1170.15 defined states, the only way Penal Code 136.1 dissuading a witness can be ran consecutive is if there was 'intimidation' to any victims or witnesses for the case." Pet. at 40. This is false. As respondent notes, the word "intimidation" does not even appear in Cal. Penal Code 1170.15.

Later in his petition (53-54) petitioner asserts his sentence: 1) violates due process; 2) resulted from inadequate representation; 3) subjects him to cruel and unusual punishment; 4) is the result of prosecutorial vindictiveness; 5) exceeds the maximum sentence allowed by law; 6) is unlawful because he was given multiple sentences for the same act; and 7) is unlawful because certain enhancements are based on facts not found true by a jury. Not surprisingly, there are no facts supporting any of these assertions.

XI. Marsden Motion

Petitioner asserts the trial court erred by denying his motion brought pursuant to People v. Marsden, 2 Cal.3d 118, 123 (1970) to have his trial counsel Eric Schlueter relieved and new counsel provided due to a conflict of interest.[8] Under the heading for his claim "Petitioner Was Denied Marsden Motion," petitioner fails to point to any facts suggesting that the court's denial of petitioner request for appointment of new counsel deprived petitioner of any Constitutional right. Accordingly, petitioner's claim should be denied.

---

[8] The transcript of the hearing concerning petitioner's Marsden motion is attached to respondent's answer as exhibit 15.

12

Elsewhere in his petition, petitioner asserts attorney Schlueter should have been removed because he had a conflict of interest in that he had been employed by the El Dorado County District Attorney's Office for over 20 years, and was friends with the prosecutor. Pet. at 26. Having been an El Dorado County prosecutor and having friendships with El Dorado County prosecutors did not render attorney Schlueter incapable of representing petitioner conflict-free because nothing suggests that by representing petitioner, Schlueter was representing conflicting interests. Strickland v. Washington, 466 U.S. 668, 692 (1984).

On page 22 of his petition, petitioner asserts Schlueter should have withdrawn as counsel for petitioner because Schlueter "represented the accuser's family in a prior case." Petitioner fails to point to any evidence in support of this or, more importantly, that any relationship Schlueter may have had with Billy Petree's family conflicted in anyway with his representation of petitioner. For these reasons, petitioner's claim concerning the denial of his Marsden motion should be rejected.

XII. State Court Deference

As indicated above, the rejection of petitioner's claims by California courts must be afforded a degree of deference in this action. All of petitioner's claims were denied on the merits in the California Supreme Court. The only court to address any of petitioner's claims in detail was the Superior Court of El Dorado County. ECF No. 53 at 36. Neither the California Supreme Court's decision, nor the decision of the Superior Court of El Dorado County are: 1) contrary to, or involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or 2) based on an unreasonable determination of the facts. Accordingly, petitioner is barred from obtaining relief as to any of his claims by 28 U.S.C. § 2254(a).

XIII. Conclusion

After considering all of petitioner's claims and reviewing all of the evidence in the record (including all of the evidence submitted by petitioner with his petition for writ of habeas corpus and subsequent filings), the court finds that there is nothing before the court suggesting that petitioner's plea of guilty was entered involuntarily or unintelligently. Additionally, the court

13

concludes that attorney Schleuter's recommendation that petitioner plead guilty was not the result of incompetence. Finally, petitioner is barred from obtaining relief by 28 U.S.C. § 2254(a). For these reasons, the court will recommend that petitioner's petition for writ of habeas corpus be denied in its entirety and this case be closed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 19, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
alex0651.157